IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **BILL WILSON,** | ) | **CASE NO. 1:04CV1978** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Judge John M. Manos** |
| | ) | |
| **JOSEPH OLIVER, et. al.,** | ) | |
| | ) | |
| **Defendants.** | ) | **MEMORANDUM OF OPINION** |

On September 30, 2004, Bill Wilson ("Plaintiff") filed the above-captioned case raising a Bivens claim[1] against Special Agents ("SA") Joseph Oliver, Tim Riley, and Mark Behar, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and the Federal Bureau of Investigation ("FBI"); and a claim under the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 1346(b), against the United States (collectively, the "Defendants"). He is alleging that the Defendants violated his Fourth Amendment rights.

---

[1] The Plaintiff repeatedly refers to his Bivens claim as one brought pursuant to 42 U.S.C. § 1983. (Docket No. 1, at ¶ 23; Docket No 23, at 8.) However, § 1983 only prescribes state action and does not govern the conduct of federal agents acting under the color of federal law. Thus, the Court will construe any alleged § 1983 claim as one brought pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

On May 12, 2005, the Defendants filed a Motion for Summary Judgment. (Docket No. 20.) On August 9, 2005, Plaintiff filed an opposition brief. (Docket No. 23.) On August 22, 2005, the Defendants filed a reply. (Docket No. 25.)

For the following reasons, the Motion for Summary Judgment is **GRANTED**.

## I. BACKGROUND

On May 25, 2002, Plaintiff was arrested by Cleveland Police officers after a high-speed car chase. (Defendants' Ex. 1 "Behar Affidavit," at ¶ 3) At the time of his arrest, he and several other suspects were dressed in black fatigues, and were in possession of two semi-automatic pistols, a 12-gauge short barrel shotgun, a military-style K-bar knife, ski masks and gloves, two-way radios, marijuana, and literature from the New Black Panther Party. Id. at ¶ 7. The officers learned that he and the other suspects were attempting to rob the house of a local drug dealer. Id. at ¶ 4. When questioned however, he maintained that he was working undercover for the FBI. (Plaintiff's Ex. 1 "Wilson Affidavit," at ¶ 1; Defendants' Ex. 2 "Oliver Affidavit," at ¶ 7.)

According to Plaintiff, approximately three weeks prior to the attempted robbery, he informed SA Joseph Oliver that the Black Rangers planned to rob the house of a local drug dealer in order to finance their activities. (Wilson Affidavit, at ¶ 4.) Allegedly, SA Oliver advised him to "continue [his] association with the group, and to keep [SA Oliver] informed." Id. The night before the attempted robbery, Plaintiff left two phone messages with SA Oliver and SA Tim Riley. According to Plaintiff, the message left for SA Oliver indicated that a robbery was planned for the following evening. Id. at 6. According to SA Oliver and SA Riley, neither message mentioned the attempted robbery. (Oliver Affidavit, at ¶ 8; Defendants' Ex. 3 "Riley Affidavit," at ¶ 13.)

After the arrest, a Cleveland Police officer contacted SA Oliver to confirm Plaintiff's role as a paid FBI informant. (Oliver Affidavit, at ¶ 7.) SA Oliver informed the officer that Plaintiff was not working in any capacity for the FBI in which a robbery was planned, staged, or approved. Id.

Plaintiff was then interviewed by Officer Phillip Habeeb and SA Mark Behar. (Behar Affidavit, at ¶ 3-5.) He informed them that the purpose of the attempted robbery was to steal cocaine, marijuana, and money. Id. at ¶ 5. He also stated that he and his accomplices were members of the Black Stone Rangers, a local street gang affiliated with the New Black Panther Party. Id.. He maintained however, that he had infiltrated the gang as a paid FBI informant and that by participating in the attempted robbery, he was simply gathering information. Id.

SA Behar contacted SA Riley to discuss the case. Id. at ¶ 6. SA Riley informed SA Behar that although Plaintiff had provided information in the past, the attempted robbery was not part of an undercover operation. (Behar Affidavit, at ¶ 6; Riley Affidavit, at ¶ 15.) Based on the foregoing information and on May 28, 2005, SA Behar obtained and executed a warrant for Plaintiff's arrest. (Behar Affidavit, at ¶ 8.)

The Plaintiff was indicted by a grand jury for violating 18 U.S.C. § 922(g)(1) (felon in possession of a firearm); 18 U.S.C. § 924(c) (possession of a firearm in relation to a drug trafficking crime); 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance); and 26 U.S.C. § 5861(d) (possession of an unregistered firearm). Id. at ¶ 10.

In July, 2002, Plaintiff met with his attorney, SA Oliver, and Assistant United States Attorney Nancy Kelley. (Oliver Affidavit, at ¶ 9.) According to SA Oliver, Plaintiff admitted that he had participated in planning and executing the attempted robbery without authorization of the FBI. Id.

-3-

According to Plaintiff, SA Oliver "refused to deny that he had received all of the foregoing information." (Wilson Affidavit, at ¶ 12.)

In July, 2002, SA Behar met with SA Oliver to discuss the case. (Behar Affidavit, at ¶ 12.) SA Oliver confirmed that he was unaware of any plan to commit the robbery and that Plaintiff was never authorized to engage in any illegal activity. (Behar Affidavit, at ¶ 12; Oliver Affidavit, at ¶ 8.) According to SA Oliver, if a home invasion had been authorized, surveillance teams would have been present to monitor Plaintiff's movements. (Oliver Affidavit, at ¶ 8.)

On December 9, 2002, the United States Attorney's Office for the Northern District of Ohio dismissed the indictment against Plaintiff pursuant to Rule 48(a). (Defendants' Ex. 4.) He was subsequently released from jail. (Defendants' Ex. 5.) He alleges that the indictment was dismissed because the United States Attorney's Office confirmed his role as a paid FBI informant. (Wilson Affidavit, at ¶ 13.)

On August, 15, 2003, Plaintiff filed an FTCA administrative claim against the ATF and the FBI. (Complaint, at ¶ 9.) On April 1, 2004, his claim was denied. Id. On September 30, 2004, he filed the above-captioned case alleging Bivens and FTCA claims for violation of his Fourth Amendment rights. (Docket No. 1.) He seeks $1,000,000 in compensatory damages, $250,000 in punitive damages, and reasonable attorney's fees and costs.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(c).

The party moving for summary judgment has the initial burden to either (1) present affirmative evidence negating an element of the non-movant's claim or (2) demonstrate "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once that burden is met, the non-movant must set forth sufficient evidence to create a genuine issue of material fact. Klepper v. First Am. Bank, 916 F.2d 337, 342 (6th Cir. 1990). To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

All reasonable factual inferences must be drawn in favor of the non-movant. Humenny v. Genex Corp., 390 F.3d 901, 904 (6th Cir. 2004) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, "the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Indeed, "[a] mere scintilla of evidence is insufficient; rather there must be evidence on which the jury could reasonably find for the non-movant." Humenny, 390 F.3d at 904 (internal quotation omitted).

### III. LAW AND ANALYSIS

**A. Defendants FBI and ATF**

Plaintiff alleges Bivens and FTCA claims against Defendants FBI and ATF for violating his Fourth Amendment rights. However, the Supreme Court has held that a Bivens claim can only be alleged against individual federal agents, not federal agencies. FDIC v. Meyer, 510 U.S. 471, 486

(1994); see also Shaner v. United States, 976 F.2d 990, 994 (6th Cir. 1992). Moreover, the Sixth Circuit has stated that federal agencies cannot be sued under the FTCA. See Chomic v. United States, 377 F.3d 607, 608 (6th Cir. 2004). Indeed, the only proper defendant in an FTCA suit is the United States. Allgeier v. United States, 909 F.2d 869, 871 (6th Cir. 1990). Because neither a Bivens nor an FTCA claim can be alleged against a federal agency, the motion for summary judgment, with respect to Defendants FBI and ATF, is granted.[2]

### B. Defendant Behar

Plaintiff alleges a Bivens claim against Defendant Behar for bringing false charges against him in violation of the Fourth Amendment. (Complaint, at ¶13.) In short, he argues that his status as a paid FBI informant negates a finding of probable cause that he had committed an offense. Defendant Behar asserts the defense of qualified immunity. See Butz v. Economuou, 438 U.S. 478, 506-08 (1978) (permitting the defense in a Bivens-type suit). Government officials performing discretionary functions are shielded from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Garvie v. Jackson, 845 F.2d 647, 649 (6th Cir. 1988.). The Sixth Circuit applies a three-step analysis in determining whether qualified immunity exists. First, the court determines whether, viewing the evidence in light most favorable to the plaintiff, a constitutional violation has occurred. Second, the violation must have involved a clearly established constitutional right of which a reasonable person would have known. Finally, the official's conduct must be objectively unreasonable in light of the

---

[2] Plaintiff does not even pursue these claims in his opposition brief.

clearly established constitutional right. Dean v. Byerley, 354 F.3d 540, 557 (6th Cir. 2004). If no constitutional violation has occurred, no further review is necessary. Saucier v. Katz, 533 U.S. 194, 201 (2001).

An arrest based on probable cause does not violate the Fourth Amendment. See Michigan v. DeFillippo, 443 U.S. 31, 36 (1979); Crockett v. Cumberland College, 316 F.3d 571, 580 (6th Cir. 2003). Probable cause exists when there are "facts and circumstances within the officer's knowledge sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." Crockett, 316 F.3d at 580 (quoting DeFillippo, 443 U.S. at 37). Thus, the sole issue, with respect to SA Behar, is whether probable cause existed to charge Plaintiff with various drug and firearm offenses.

Here, probable cause existed. At the time of the arrest, SA Behar had knowledge of the following facts:

1. Plaintiff was involved in a high speed car chase with Cleveland police officers.

2. When arrested by Cleveland Police officers, he was wearing a ski mask, black fatigues, and had black gloves in his possession.

3. Also found was a short barrel shotgun, two semi-automatic pistols, two-way radios, a knife, a small bag of marijuana, black gloves, and ski masks.

4. A co-conspirator admitted that he, the Plaintiff, and four others planned to rob a local drug dealer alleged to have three kilos of cocaine, three to four pounds of marijuana, and more than $30,000. If the drug dealer made a false move, the plan was to kill him.

(Defendants' Ex. 1-B.) Plaintiff does not dispute these facts, which are more than sufficient to establish probable cause. Rather, he argues that because his conduct was allegedly authorized by the FBI, SA Behar lacked probable cause to file charges. However, both SA Riley and SA Oliver informed SA

-7-

Behar that the attempted robbery was not authorized by the FBI. (Behar Affidavit, at ¶ 6; Riley Affidavit, at ¶ 15). It is certainly reasonable for SA Behar to rely on statements made by his fellow officers. See Bennett v. City of Eastpointe, 410 F.3d 810, 830 (6th Cir. 2005). Even assuming that SA Oliver and SA Riley lied about whether they authorized the attempted robbery, that fact would not establish liability against SA Behar. Accordingly, based on the facts reasonably relied upon by SA Behar, probable cause existed to charge Plaintiff and thus, no Fourth Amendment violation occurred. DeFillippo, 443 U.S. at 36; Crockett, 316 F.3d at 580. He is entitled to qualified immunity. Saucier, 533 U.S. at 201. The motion for summary judgment, with respect to SA Behar, is granted.

**C.  Defendant Riley**

Plaintiff alleges a Bivens claim against Defendant Riley for denying the fact that he was working as a paid informant when he attempted the robbery. According to Plaintiff, this denial led to his arrest and six-month detention in violation of the Fourth Amendment.[3] However, the issue is not whether Plaintiff was a paid informant; the issue is whether Plaintiff, as a paid informant, was authorized by SA Riley to participate in the attempted robbery.

Defendant Riley raises the defense of qualified immunity. Thus, the Court's first inquiry is whether a constitutional violation has occurred. Saucier, 533 U.S. at 201. It is not clear whether Plaintiff has sufficiently alleged a Fourth Amendment violation against SA Riley because he never alleges

---

[3]  For the first time, Plaintiff also raises, in his opposition brief, a Fourteenth Amendment claim pursuant to Brady v. Maryland, 373 U.S. 83 (1963). Notwithstanding the fact that the Fourteenth Amendment does not apply to federal actors, see Newsome v. EEOC, 373 F.3d 227, 232 (5th Cir. 2003), the Court will not entertain new causes of action not raised in the complaint.

-8-

that SA Riley searched his home or seized his person.

However, even if this could be construed as a Fourth Amendment violation, the undisputed facts show that Plaintiff was not authorized by SA Riley to participate in the attempted robbery. Indeed, Plaintiff does not even mention SA Riley in his affidavit or opposition brief. Nor does he allege that SA Riley knew about the attempted robbery. In fact, the only evidence that implicates SA Riley comes from SA Riley's own affidavit where he indicates that Plaintiff left him a phone message. (Riley Affidavit, at ¶ 13.) Obviously, leaving a message with a special agent the night before engaging in illegal conduct, standing alone, cannot constitute authorization to commit a crime. Moreover, SA Riley affirmatively denies having authorized Plaintiff to engage in any illegal conduct. (Riley Affidavit, ¶ 15.) Several electronic communications between SA Riley and FBI Headquarters indicate that SA Riley informed Plaintiff on several occasions that he was not permitted to engage in any unlawful activity. (Riley Affidavit, at 7-18.) Because Plaintiff does not allege anything to the contrary, no constitutional violation has occurred, SA Riley is entitled to qualified immunity, and the motion for summary judgment, with respect to him, is granted. Saucier, 533 U.S. at 201.

### D. Defendant Oliver

Plaintiff alleges a Bivens claim against Defendant Oliver for denying the fact that he was working as a paid informant when he attempted the robbery. According to Plaintiff, this denial led to his arrest and six-month detention in violation of the Fourth Amendment. Again, the issue is whether Plaintiff, as a paid informant, was authorized by SA Oliver to participate in the attempted robbery.

Defendant Oliver raises the defense of qualified immunity. Thus, the Court's first inquiry is whether a constitutional violation has occurred. Saucier, 533 U.S. at 201. It is not clear whether

Plaintiff has sufficiently alleged a Fourth Amendment violation against SA Oliver because he never alleges that SA Oliver searched his home or seized his person.

However, even if this could be construed as a Fourth Amendment violation, the undisputed facts show that Plaintiff was not authorized by SA Oliver to participate in the attempted robbery. Plaintiff attempts to create a genuine issue of material fact by referencing four statements in his affidavit.[4] First, he states that he was assured by SA Oliver that "my activities were sanctioned." (Wilson Affidavit, at ¶ 3.) However, this statement does not specify exactly what activities were sanctioned nor whether SA Oliver specifically sanctioned illegal activities. If, in fact, all of his activities with the Black Panthers were sanctioned, as Plaintiff suggests, then he would have been free to commit murder, rape, and robbery all without consequence. Nothing in this statement suggests that he was specifically authorized to participate in the attempted robbery.

Second, Plaintiff states that he told SA Oliver about the attempted robbery and "was advised ... to continue my association with the group, and to keep him informed." Id. at ¶ 4. Again, nothing in this statement constitutes authorization to participate in the attempted robbery.

Third, Plaintiff states that he left a phone message with SA Oliver the night before the attempted

---

[4] Plaintiff also points to an affidavit filed by Michael Bearden that states:

> Agent [Christine] Oliver told me to 'let him (Bill Wilson) know that I am doing everything I can to help him.' I took this to mean that since Mr. Wilson was working with FBI agents at the time of his arrest, that Agent Oliver felt responsible that Bill Wilson was incarcerated, without cause.

(Plaintiff's Ex. 2, "Bearden Affidavit," at ¶ 7.) The Court will not consider such statements that are both hearsay and based on speculation.

robbery. Id. at ¶ 6. Again, leaving a message with a special agent the night before engaging in illegal conduct, standing alone, cannot constitute authorization to commit a crime.

Finally, Plaintiff states that during a meeting with his attorney, SA Oliver, and the U.S. Attorney, "[SA Oliver] refused to deny that he had received all of the foregoing information." Id. at ¶12. It is unclear what "foregoing information" Plaintiff is referring to in this last statement. If he is referring to the phone message he left SA Oliver, the Court has already held that leaving a phone message with a special agent does not constitute authority to commit the crime. Regardless, nothing in this statement suggests that Plaintiff was authorized to commit a crime.

Because SA Oliver affirmatively denies authorizing Plaintiff to participate in the attempted robbery, (Oliver Affidavit, at ¶ 6,) and because Plaintiff does not specifically allege anything to the contrary, no constitutional violation has occurred, SA Oliver is entitled to qualified immunity, and the motion for summary judgment, with respect to him, is granted. Saucier, 533 U.S. at 201.

### E. Defendant United States

Plaintiff alleges an FTCA claim against the United States for violating his Fourth Amendment rights. The FTCA provides a limited waiver of sovereign immunity for tort claims against the United States "in the same manner and to the same extent as a private individual under like circumstances." Chomic, 377 F.3d at 609. In other words, sovereign immunity is waived only "to the extent that state-law would impose liability on a private individual in similar circumstances." Id. (quoting Young v. United States, 71 F.3d 1238, 1241 (6th Cir. 1995)). Thus, the FTCA does not waive sovereign immunity for constitutional violations. See Meyer, 510 U.S. at 478. Here, because Plaintiff 3alleges a Fourth Amendment violation, as opposed to a state-based claim, his FTCA claim lacks merit. Id. In

-11-

his opposition brief, he attempts to thwart this outcome by raising, for the first time, a malicious prosecution claim. Again, the Court will not entertain new causes of action not raised in the complaint.

The motion for summary judgment, with respect to the United States, is granted.

### IV. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment is **GRANTED**. Each party to bear its own costs.

**IT IS SO ORDERED**

**Date: October 12, 2005**                          /s/ *John M. Manos*
                                                                        **UNITED STATES DISTRICT JUDGE**